# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARREN WINGERTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-930-F |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Darren Wingerter brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Stephen Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R. _").[1] The parties have briefed their positions, and the case is now ready for decision. For the reasons set

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

forth below, the undersigned recommends that the Commissioner's decision be reversed and the case remanded for further proceedings.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on June 7, 2012, initially alleging a disability onset date of January 1, 2011, and later amending the alleged onset date to February 1, 2013. R. 40-41, 213-23. Following denial of Plaintiff's applications initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing. R. 33-66, 92-100, 108-13. The ALJ issued an unfavorable decision on March 27, 2015. R. 16-27. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-6; *see also* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed this action for judicial review.

## ADMINISTRATIVE DECISION

As relevant here, a person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 42 U.S.C. § 416(*i*)(1). The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2013. R. 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: panic disorder, major depressive disorder, osteoarthritis, cellulitis, and

degenerative disc disease of the cervical spine.  R. 18.  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments.  R. 21-25.  The ALJ found that Plaintiff has the RFC to perform medium work, except:

> He is limited to occasional climbing of stairs, balancing, stooping, kneeling, crouching and crawling; and never climbing ladders, ropes or scaffolds.  The claimant is able to understand, remember and carry out simple and detailed instructions.  He is limited to occasional direct face-to-face interaction with co-workers and supervisors; and no public contact.

R. 21; *see* 20 C.F.R. §§ 404.1567(c), 416.967(c) (defining "medium" work).  At step four, the ALJ found that Plaintiff was unable to perform past relevant work and that transferability of job skills was not a material issue.  R. 25-26.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform.  Taking into consideration the hearing testimony of a vocational expert regarding the degree of erosion to the unskilled medium occupational base that is caused by Plaintiff's postural and mental limitations, the ALJ concluded that Plaintiff could perform occupations such as laundry laborer, grinding and polishing laborer, and floor waxer, all of which offer jobs that exist in significant numbers in the national economy.  R. 26-27.  On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 1, 2013, through the date of the decision.  R. 27.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

Plaintiff argues that the ALJ did not properly consider the medical opinion of Plaintiff's treating physician and did not properly evaluate Plaintiff's credibility. *See* Pl.'s Br. (Doc. No. 13) at 1-8; Pl.'s Reply Br. (Doc. No. 20) at 1-4.

ANALYSIS

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a), 416.902, .913(a). The Commissioner generally gives the greatest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship." *Id.* §§ 404.1502, .1527(c), 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When considering the medical opinion of a claimant's treating source, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *1-4 (July 2, 1996). The opinion of a treating source is given such weight if it is both well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1529(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *2 ("[W]hen all of the factors are satisfied, the [ALJ] must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion.").

A treating source opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should

5

be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5). "If the ALJ rejects the opinion completely, he [or she] must then give specific, legitimate reasons for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks and brackets omitted). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical report and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Id.* (internal quotation marks omitted).

Plaintiff contends that the ALJ did not properly consider the medical opinion of Plaintiff's treating physician, Priya Samant, MD. Pl.'s Br. at 4-6. The record contains 13 treatment notes from Dr. Samant dated January 2013 through October 2014. R. 481-506. All of those notes indicate that Plaintiff was seeing Dr. Samant for osteoarthritis, lumbar spondylosis, internal derangement of knee, and cervical radiculopathy, which Dr. Samant was managing with medications including Flexeril, Celebrex, ibuprofen, and gabapentin. *See id.* Dr. Samant ordered diagnostic images to investigate the cause of Plaintiff's chronic knee pain in January, March, and November 2013. *See* R. 492-93, 502-04, 505-06, 511, 513. The record also contains a prescription from Dr. Samant, dated December 10, 2014, for a cane "for ambulation." R. 507.

On November 27, 2013, Dr. Samant completed a Medical Source Opinion of Residual Functional Capacity in which he opined that Plaintiff's "physical ability to perform work-related activities during an eight hour workday would be limited" to less than two hours of standing/walking and to lifting/carrying less than ten pounds. R. 428 (emphasis omitted). Dr. Samant identified "lumbar spondylosis" and "osteoarthritis [of the] left knee" as the "medical findings that support [this] assessment." *Id.* The ALJ effectively rejected Dr. Samant's medical opinion, stating:

> Little weight is given to this opinion as it appears to be based upon the claimant's subjective complaints and assumes facts, which are not supported by the record. Additionally, Dr. Samant's opinions are inconsistent with his own treatment notes and other substantial medical evidence of record.

R. 24; *see also* R. 21 (ALJ finding that Plaintiff retained the RFC for "medium work," including the abilities to stand/walk "up to 6 hours in an 8-hour workday," to frequently

7

lift items weighing 25 pounds, and to occasionally lift items weighing up to 50 pounds); R. 25 (ALJ giving "great weight" to reviewing physicians' opinion that Plaintiff retained the RFC for "medium work" with "occasional" postural limitations).

The ALJ in this case gave a "facially valid reason for rejecting" a treating physician's medical opinion. *Downing v. Astrue*, No. 11-CV-495-PJC, 2012 WL 44509067, at *11 (N.D. Okla. 2012) (citing *Langley*, 373 F.3d at 1121-22); *see, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (concluding that "the ALJ was free to reject" a treating psychologist's medical opinion where the ALJ explained that the opinion "appeared to be based on subjective complaints and isolated instances rather than objective findings" and "contradicted the opinions" of two other treating sources (internal quotation marks omitted)); *Bybee v. Berryhill*, No. CIV-16-1138-R, 2017 WL 3447809, at *5 (W.D. Okla. July 24, 2017) (R. & R.) (finding no error in ALJ's rejection of a treating physician's medical opinion where the ALJ identified specific examples of how the physician's opinion was "inconsistent with her own treatment notes and the other medical evidence of record"), *adopted*, 2017 LW 3431854 (W.D. Okla. Aug. 9, 2017); *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6); 416.927(c)(2)-(6). The problem, however, is that the ALJ did not "specifically highlight those portions of the record with which [Dr. Samant's] opinion was allegedly inconsistent." *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). Nor did the ALJ identify the specific "facts" that Dr. Samant's medical opinion purportedly "assumes" or explain why those purported assumptions were not "not supported by the record." R. 24. Thus, the Court has no meaningful way to evaluate whether the ALJ permissibly rejected Dr. Samant's medical opinion "*only* on the basis of

*contradictory* medical evidence" in the record, or whether the ALJ impermissibly based the rejection on "her own credibility judgments, speculation or lay opinion." *Robinson*, 366 F.3d at 1082 (emphasis added); *accord Langley*, 373 F.3d at 1123 (explaining that although the ALJ "provided a facially valid reason" for discounting a treating physician opinion, his failure "to explain or identify what the claimed inconsistencies were between [the physician's] opinion and the other substantial evidence in the record" meant that the ALJ's "reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings").

The undersigned's independent review of the record reveals "no obvious inconsistencies" between Dr. Samant's medical opinion about Plaintiff's significant exertional limitations and either Dr. Samant's own treatment notes or other substantial medical evidence in the record. *Langley*, 373 F.3d at 1122. In her decision, the ALJ summarized some of Dr. Samant's treatment notes, as well as x-rays ordered by Dr. Samant. *See* R. 24. But, in some instances, the ALJ passed over probative portions of the treatment notes documenting pain and functional limitations and, in other instances, the ALJ was inaccurate in her summaries of the medical evidence. *See Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996))). And, overall, the ALJ failed to note Dr. Samant's consistent diagnoses of osteoarthritis, lumbar spondylosis, internal derangement of knee,

and cervical radiculopathy, and that Dr. Samant consistently prescribed Plaintiff various medications to help with the pain:

- January 24, 2013, "Patient here with c/o lt knee pain. Swelling is down but knee still hurts. . . . He was unable to get medications filled." Assessment: internal derangement of knee. Plan includes ordering x-rays of the knee and prescriptions for Flexeril, ibuprofen, and gabapentin. R. 505-06. The ALJ mentioned this treatment record, but noted only that it showed Plaintiff "was seen for left knee pain." R. 24. She did not mention that Dr. Samant diagnosed Plaintiff with "internal derangement of [the] knee" or that the physician prescribed three medications to treat that pain. *Id.*

- January 25, 2013, x-rays of Plaintiff's left knee. Patient's history is noted as "knee pain," and findings show "[m]ild spurring of the lateral femoral condyle and tibial spines." Impression: "Mild degenerative change of the left knee." R. 511. The ALJ adequately summarized these x-rays. *See* R. 24.

- March 6, 2013, "Patient here for refill on medications. He c/o pain [in] his Rt hand and Lt thumb. He sometimes has difficulty closing his Rt hand. He says his fingers get stuck. He has pain over the bottom of his [left] thumb." Assessment: osteoarthritis. Plan includes prescriptions for Flexeril and ibuprofen, and includes the notations: "OA in hands. Mild DJD in [left] knee. Will refer knee for MRI as patient has difficulty ambulating due to knee pain." R. 502-04. The ALJ's summary of this treatment record mentions only Plaintiff's diagnosis of osteoarthritis and the pain in his hand and thumb; it does not reflect Dr. Samant's comment that Plaintiff

would be referred for diagnostic imaging to investigate the source of his knee pain. Nor does it acknowledge Dr. Samant's comment that Plaintiff "has difficult ambulating due to knee pain." *See* R. 24.

- April 17, 2013, "Patient here for followup on medications. He c/o pain in his back." Assessment: osteoarthritis, lumbar spondylosis, internal derangement of knee. Plan includes increasing Plaintiff's Flexeril to three times daily, substituting Celebrex for ibuprofen, and continuing on 800 mg of gabapentin three times daily. R. 501-02. The ALJ did not mention this treatment record. *See* R. 24.

- May 15, 2013, "Patient here for refill on medications. He was not able to get [gabapentin] filled on his last visit." Assessment: lumbar spondylosis, internal derangement of knee. Plan includes prescriptions for Flexeril and Celebrex. R. 499-500. The ALJ did not mention this treatment record. *See* R. 24.

- June 20, 2013, "Patient here for followup [on his back]. He needs refills on medications. He denies any new problems. He wants to get back on Ibuprofen as he doesn[']t want to go to MMHC to obtain Celebrex." Assessment: osteoarthritis, sciatica. Plan includes prescriptions for Flexeril, ibuprofen, and gabapentin. R. 496-97. The ALJ did not mention this treatment record. *See* R. 24.

- August 21, 2013, "Patient here for refill on medications. He denies any other complaints. Went to ST Anthonys ER about 1½ months ago for back pain. No xrays done, given RX for Lortab and muscle relaxant." Notes on Plaintiff's "general appearance" showed that he was alert; oriented to time, place, and person, and "[i]n no acute distress." Assessment: osteoarthritis, lumbar spondylosis. Plan includes

11

prescriptions for Flexeril, ibuprofen, and gabapentin. R. 494-95. The ALJ's summary of this treatment record states only that Plaintiff "was in no distress" in August 2013. She did not mention Plaintiff's reports of prior back pain or Dr. Sumant's assessment and treatment plan. *See* R. 24.

- November 27, 2013, "Patient here for refill on medications. He missed his appointment for MRI. He now has pain in his Rt knee as well. He is unable to work due to pain in his knees." Assessment: osteoarthritis, lumbar spondylosis, sciatica. Plan includes ordering x-rays of Plaintiff's right knee and prescriptions for Flexeril, ibuprofen, and gabapentin. R. 492-93. In summarizing this treatment record, the ALJ stated only that "progress notes show that [Plaintiff] was doing well" in November 2013. R. 24. The ALJ did not mention Plaintiff's new complaints of pain in his right knee, Plaintiff's comment that he could not work due to pain in his knees, or Dr. Samant's decision to refer Plaintiff for additional diagnostic imaging of his right knee. *See* R. 24. Additionally, Dr. Samant did not indicate in this treatment note that Plaintiff "was doing well." *Compare* R. 24, *with* R. 492-93. On the contrary, this was the same date on which Dr. Samant opined that Plaintiff's "physical ability to perform work-related activities"—specifically standing/walking and lifting/carrying—"during an eight hour workday" were severely limited by his "lumbar spondylosis" and "osteoarthritis [of the] left knee." *See* R. 428.

- November 27, 2013, x-rays of Plaintiff's right knee showing "mild narrowing of the joint space." R. 513. Patient's history is noted as "pain," and the impression is

"[m]ild degenerative change, no acute abnormality." *Id.* The ALJ did not mention these x-rays. *See* R. 24.

- December 18, 2013, "Patient here for follow up. He missed his appointment for MRI. He wants to discuss results of his Xrays." Assessment: osteoarthritis, lumbar spondylosis. Plan includes prescriptions for Flexeril, ibuprofen, and gabapentin, and notes "[m]ild OA noted on Xrays." R. 490-91. The ALJ did not mention this treatment record. *See* R. 24.

- February 19, 2014, "Patient [here] for refill on medica[ti]ons. He denies any new complaints. He has not experienced any side effects with ibuprofen. He has lost some weight." Assessment: osteoarthritis, lumbar spondylosis. Plan includes prescriptions for Flexeril, ibuprofen, and gabapentin. R. 489-90. The ALJ's summary of this treatment record states that Plaintiff "denied any new complaints and had no side effects from medications." R. 24. It does not reflect Dr. Samant's assessments or the prescriptions for Flexeril and gabapentin. *See* R. 24.

- April 16, 2014, "Patient here for refill on medications. He denies any other complaints." Assessment: osteoarthritis, lumbar spondylosis, internal derangement of knee. Plan includes prescriptions for Flexeril, ibuprofen, and gabapentin. R. 487-88. The ALJ did not mention this treatment record. *See* R. 24.

- June 11, 2014, "Patient here for follow up. He is wearing a brace for his Lt knee. He denies any new problems. He continues to have pain in his knee and low back but it is better. He is still unable to work." Assessment: osteoarthritis, lumbar spondylosis. Plan includes prescriptions for Flexeril, ibuprofen, and gabapentin. R.

485-86. The ALJ's summary of this treatment record states, "June 2014 notes show that he was wearing a knee brace for his left knee, but his low back was better." *See* R. 24. The ALJ did not mention Dr. Samant's assessment and treatment plan or Plaintiff's comment that he "is still unable to work." *Id.*

- August 11, 2014, "F/U appt C/O hurting behind left shoulder blade, pain radiates down left arm and [feels] numb most of the time. . . . Pain in the left arm for a month." Assessment: cervical radiculopathy. Plan includes ordering x-rays and prescriptions for Flexeril, ibuprofen, and gabapentin as well as a new prescription for steroids. R. 483-84. The ALJ adequately summarized this treatment record. *See* R. 24.

- August 11, 2014, x-rays of Plaintiff's cervical spine. Patient's history is noted as "neck pain with radiculopathy," and findings show "moderate facet and severe disc degeneration at C3-4, C4-5, C5-6, and C6-7." Impression: "Severe degenerative changes at C3-C7." R. 509. The ALJ's summary of these x-rays states that the "X-rays revealed degenerative changes at C3-C7," but it does not mention the reviewing radiologist's opinion that the degenerative changes were "severe." *See* R. 24.

- October 6, 2014, "Patient here for neck and back pain. He states that his shoulder pain is much better with steroid pack. He wants refills on medications. He states that he has seen pain and swelling on his Rt leg." Assessment includes osteoarthritis, lumbar spondylosis, and cervical radiculopathy. Plan includes prescriptions for Flexeril, ibuprofen, and gabapentin. R. 481-82. The ALJ's

discussion of this treatment record states only that Plaintiff "reported that his shoulder pain was much better." R. 24.

The ALJ also stated that Dr. Samant's medical opinion was inconsistent with "other substantial medical evidence of record." R. 24. Again, though, the ALJ failed to "specifically highlight those portions of the record with which [Dr. Samant's] opinion was allegedly inconsistent." *Hamlin*, 365 F.3d at 1217. The ALJ did summarize a report of a consultative exam done by Robin Hall, MD, and perhaps perceived inconsistencies between Dr. Hall's report and Dr. Samant's opinion. *See* R. 24. On August 23, 2012, Dr. Hall examined Plaintiff at the SSA's request. *See* R. 391-97. In describing Dr. Hall's report, the ALJ stated that Plaintiff "reported that his chronic back pain was being treated successfully with Flexeril, Ibuprofen, and Neurontin." R. 24. As reported by Dr. Hall, however:

> Pt states he has chronic back pain. He is being treated by Healing Hands. He has been taking Flexeril, Ibuprofen and Neurontin which helps his back pain. He says he can only stand for 20-30 mins. He can sit for 30 mins. Pt complains of numbness in his lateral thighs bilaterally and pain in his low back which radiates down his left leg occasionally. He describes this pain as an ache. He rates this pain as a 7-8/10. He has not had an MRI of his back. He states he has had x-rays. He says after 8 hrs of work he feels like he is "almost crippled."

R. 391. Additionally, though the ALJ stated that Dr. Hall's examination "showed only mild decreased range of motion of the lumbosacral spine," Dr. Hall's notes indicate 80/90 on back flexion, but 5/25 on back extension; 5/25 on back lateral flexion, left; and 5/25 on back lateral flexion, right. R. 394, 396; *see also* R. 405. In light of these differences, to the extent the ALJ may have relied on Dr. Hall's August 2012 report to find that Dr.

15

Samant's November 2013 opinion was "inconsistent with . . . other substantial medical evidence of record," the undersigned finds that such reliance is not adequately explained or supported by the record. *See Langley*, 373 F.3d at 1123.

Additionally, the ALJ also failed to note that there was probative medical evidence in the record that tended to support Dr. Samant's opinion that "lumbar spondylosis" and "osteoarthritis [of the] left knee" severely limited Plaintiff's ability to stand/walk and lift/carry more than a minimal amount of weight during a normal workday. *See Robinson*, 366 F.3d at 1082 (explaining that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or law opinion"). Specifically, the ALJ failed to acknowledge consistency with the three sets of x-rays in the record, only two of which the ALJ noted in her brief summary of the medical evidence, that show degenerative changes in Plaintiff's knees and neck. *See* R. 508-13; R. 24; *see also* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).[2]

The ALJ's failure to adequately explain her stated reasons for rejecting Dr. Samant's medical opinion is compounded by the fact that the decision does not reflect whether the ALJ recognized that Dr. Samant qualified as Plaintiff's "treating physician" when he issued his medical opinion on November 27, 2013. *See* R. 24, 492-506. Properly evaluating any medical opinion requires the ALJ to determine who gave the opinion, whether that person is an "acceptable medical source," and if so whether that source's "treatment relationship"

---

[2] On remand, the Commissioner should also consider the August 4, 2015 MRI showing a meniscal tear in Plaintiff's left knee. R. 9-10.

16

with the claimant might entitle his or her medical opinion to special deference under the regulations. *See Doyal v. Barnhart*, 331 F.3d 758, 762-63 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *cf. Winick v. Colvin*, 674 F. App'x 816, 820 (10th Cir. 2017) (rejecting the possibility of harmless error where the ALJ misidentified one of claimant's physicians "as an examining, rather than a treating" source). A physician's status as the claimant's treating source automatically triggers "the ALJ's duties not only to determine whether to assign [the] treating physician's opinion controlling weight, but to give deference to [the] . . . opinion even if he does not assign it controlling weight." *Winick*, 674 F. App'x at 820 ("The exercise of such deference might have changed the relative weight assigned to all the medical opinions, including the non-examining consultants whose opinions the ALJ assigned great weight."). The record reflects that Dr. Samant saw Plaintiff roughly once a month between January 24, 2013, and November 27, 2013. *See* R. 492-93 (November), 494-96 (August), 496-98 (June), 498-500 (May), 500-02 (April), 502-03 (March), 504-06 (January). While the ALJ summarized portions of treatment notes produced during the same time period, the ALJ did not identify them as Dr. Samant's treatment notes and she at no point recognized that Dr. Samant's November 2013 opinion must be considered that of a treating source. R. 24; *see Robnett v. Berryhill*, No. CIV-15-362-CG, 2017 WL 564681, at *7 (W.D. Okla. Feb. 13, 2017). Nor can the undersigned infer such recognition through the discussion that the ALJ did provide, which omits the question of whether Dr. Samant's opinion might be entitled to controlling weight and reflects no difference in the approaches applied to weigh Dr. Samant's opinion (presumptively a treating source opinion) and medical opinions from two non-examining

17

agency physicians who reviewed Plaintiff's medical records in September 2012 and March 2013. R. 24-25; *see Robnett*, 2017 WL 564681, at *3, *7; 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

In sum, the ALJ's decision fails to provide adequate reasons for rejecting the opinion of Plaintiff's treating physician. *See Langley*, 373 F.3d at 1119, 1123 (explaining that the ALJ must "give specific, legitimate reasons" for rejecting a treating physician's medical opinion, and finding that an ALJ's failure "to explain or identify what the claimed inconsistences were between" the treating physician's opinion "and the other substantial evidence in the record" meant that the ALJ's "reasons for rejecting that opinion [were] not 'sufficiently specific'" to allow meaningful judicial review); *Hamlin*, 365 F.3d at 1217 (explaining that the ALJ's failure to "specifically highlight those portions of the record with which [the treating physician's] opinion was allegedly inconsistent" required remand where the record contained unanalyzed medical evidence that was consistent with the physician's opinion) ). The ALJ's rejection of Dr. Samant's opinion was not adequately supported by substantial evidence and remand is required. Because this issue alone warrants remand, the undersigned need not address the other claim of error raised by Plaintiff. *See Watkins*, 350 F.3d at 1299.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be reversed and the case remanded for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 15, 2017. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 1st day of September, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE